Merrill and others vs. Nightingale and others.

MERRILL and others vs. NIGHTINGALE and others.

39    247
90    606
39    247
a106  289
106   290

CONTRACT: GOODS MADE TO ORDER. *(1) Breach of warranty: Rights of purchaser.*

EVIDENCE. *(2) When maker, in action for contract price, may prove actual value. (3) Order of proof under control of trial court. (4) Rebutting evidence as to breach of warranty.*

REVERSAL OF JUDGMENT. *(3) No fatal error where appellant not injured. (5) When verdict will not be disturbed.*

1. Where machinery, made to order, fails to answer the purpose for which the maker knew it was ordered, or fails to perform as warranted, the purchaser may relieve himself from liability to pay for it, by returning or offering to return it within a reasonable time; or may retain it, and, in an action for the contract price, recoup his damages for breach of the contract of warranty, including the difference between the actual value of the machinery and what its value would have been, had it been as warranted.

2. Where the purchaser of such machinery seeks, in an action for the contract price, to recoup damages for breach of warranty, the plaintiff may introduce proof of the actual value of the machinery, independently of the contract.

3. The order of proof is very much under the control of the trial court; and where the plaintiffs' proof of the actual value of the machinery, in such a case, was received before defendants had given evidence of their damages: *Held*, that the judgment will not be reversed for that reason, it not appearing that defendants could be injured by the practice adopted.

4. The machinery in question being designed for the manufacture of a certain kind of paper, and defendants having testified that, upon their testing it, such paper could not be manufactured with it, plaintiffs were entitled to show, in rebuttal, that the tests made were not fair or conclusive, because of the unfitness of the water used, or for any other reason.

5. Where, upon an admissible theory of the case, the verdict is supported by the evidence, it will not be disturbed.

APPEAL from the Circuit Court for *Outagamie* County.

It appears from the pleadings and evidence that the plaintiffs agreed to manufacture for, and put up for use in the mill of the defendants, certain paper-mill machinery, for the manufacture of straw board paper, for which the defendant agreed

to pay $19,250, and that they paid on the contract about $15,000. This action is for the unpaid balance of such contract price.

The plaintiffs gave testimony on the trial tending to prove performance by them of the agreement.

The defendants aver in their answer, and introduced testimony on the trial tending to show, that the plaintiffs' agreed to furnish such machinery ready for use by a day certain; and that when so furnished, a specific kind of straw board paper, known as No. 40, could be manufactured with it; but that the machinery was not furnished until three months after the agreed time, and that when furnished No. 40 straw board paper could not be manufactured with it. The answer contains counterclaims for damages for the alleged failure of the plaintiffs to perform their contract as respects both the capacity of the machinery and time.

In their reply to such counterclaims, the plaintiffs deny that they agreed to furnish the machinery by a day certain, or that the specified kind of paper could be manufactured therewith; and they introduced testimony tending to prove such denials. They admit, however, that the machinery was furnished for the manufacture of straw board paper, but of much higher numbers.

Defendants introduced testimony tending to show that they were unable to manufacture straw board paper of any number with the machinery furnished by the plaintiffs; and one of them testified, on cross examination, that the fault was not in the water used in the attempted process. The plaintiffs were permitted, under objection, to give testimony to the effect that the water so used was filthy and entirely unfit to be used in such process; and also to give testimony of the value of the machinery, irrespective of the contract of sale.

The evidence of the defendants tends to show that they used the machinery for making wrapping paper, which was less profitable than straw board, and that subsequently they

changed the machinery so that they could manufacture straw board.   They retain and use the machinery.

The instructions given to the jury cover the whole case, and were not excepted to by the defendants.   The jury found for the plaintiffs, and assessed their damages at $3,280.   Under the charge of the court, it may be assumed that this is the amount of the principal sum found due the plaintiffs and interest thereon for something more than a year; and a computation shows that the jury must have allowed the defendants between $1,300 and $1,500 on one or more of their counter-claims, but on which of them does not appear.

A new trial was denied, and judgment was rendered pursuant to the verdict.   The defendants appealed from the judgment, assigning the following errors: "1. The court erred in admitting evidence of the value of the machinery, irrespective of the contract of sale.   2. The court erred in admitting proof that the quality of water used in testing the machinery destroyed its effectiveness for the purpose sold.   3. There is no evidence to support the verdict under the instructions of the court."

*E. S. Bragg*, for appellants:

1. It is undisputed that the price for which the machinery was sold was fixed by the terms of sale.   It was immaterial, therefore, for the plaintiffs to show what the goods were in fact worth, and it cannot be known that defendants were not injured by the improper admission of such proof.   2. It was error to admit testimony that no paper could be made with the kind of water used by defendants.   This was an entirely new issue, not in the pleadings, and inconsistent with them. 3. Counsel argued from the evidence that the verdict could not stand; that it was either not nearly large enough, or altogether too large.

*David Taylor*, for respondents, contended that there was abundant evidence to support the verdict; that the *quantum* of damages was to be fixed by the jury, and that, as it cannot

be said that the amount fixed was so clearly wrong as to ren-
der it evident that they made a gross mistake or were actuated
by corrupt motives, the verdict must stand. *McDonald v.
Walter*, 40 N. Y., 551; *Richards v. Sandford*, 2 E. D. Smith,
349; *Armytage v. Haley*, 4 Q. B., 917; *Collins v. Albany R.
R. Co.*, 12 Barb., 492; 3 Wait's Pr., 413; *Apps v. Day*, 14 C.
B., 112; *Bradlaugh v. Edwards*, 11 C. B., N. S., 377.   The
court should give such construction to the evidence as will
support the verdict. *Kœnig v. Katz*, 37 Wis., 153.   Counsel
also argued from the record that the jury must have found
that there was no breach of warranty, and therefore the ad-
mission of evidence merely tending to show the *quantum* of
damages in case a breach were found, was harmless; that there
was no issue as to the capacity of the machinery to make straw
board paper No. 40, because plaintiffs admitted that such pa-
per could not be made with it, merely denying any such war-
ranty; and that if there had been any issue as to its capacity
to make the higher numbers (as from 80 to 120), the evidence
introduced by plaintiffs as to the quality of the water used by
defendants would have been competent and material.

Lyon, J.   I. If, after a fair trial thereof, the machinery
failed to answer the purposes for which the plaintiffs knew it
was ordered, or failed to perform as warranted by the plaint-
iffs, the defendants might have relieved themselves from all
liability to pay therefor by refusing to retain it, and by return-
ing or offering to return the same to the plaintiffs within a
reasonable time after it was put up in their mill. *Woodle v.
Whitney*, 23 Wis., 55.   The defendants did not elect to take
this course, but retained the machinery, and seek, in this
action for the unpaid balance of the price thereof, to recoup
their damages for the alleged breach of the contract of war-
ranty.   This they may lawfully do; and the measure of their
damages for such breach, or, at least, a portion of their dam-
age therefor, is the difference between the actual value of the

machinery and what its value would have been had it been as warranted. *Boothby v. Scales*, 27 Wis., 626, and cases cited. *Giffert v. West*, 33 id., 617; *Bonnell v. Jacobs*, 36 id., 59.

The defendants introduced evidence of the damages suffered by them by reason of the alleged breach of warranty; and certainly it was competent for the plaintiffs to give testimony on the same subject. In view of the rule of damages above stated, proof of the actual value of the machinery was competent. Indeed, in the absence of such proof, the damages which the defendants seek to recoup cannot be ascertained. The actual value of the machinery is put in issue by the pleadings, and it cannot be error to admit evidence thereof.

The only plausible ground of objection to the testimony under consideration is, we think, that it was received before the defendants had given any proof of their damages. The order of proof is very much under the control of the trial court; but if the practice here adopted was irregular, it is not perceived how the irregularity could possibly result in harm to the defendants.

II. It is a verity in the case that the machinery was furnished for the purposes of the manufacture of straw board paper, the controversy being as to the numbers or kinds of such paper to be manufactured therewith. There was at least an implied warranty that the machinery was sufficient for the purposes for which it was furnished. The defendants gave testimony on the trial tending to show that the machinery was fully tested, and that neither No. 40 nor any other number or kind of straw board paper could be manufactured with it. Clearly it was competent for the plaintiffs to rebut the defendant's proofs by showing that, because of the unfitness of the water used in testing the machinery, or for any other reason, the tests were not fair or conclusive of the capacity of the machinery.

III. It is claimed that there is not sufficient evidence to support the verdict; that in any reasonable view of the testi-

mony, the verdict is entirely too large or too small. We do not think so. The damages for the causes alleged in the counterclaims were unliquidated, and the testimony tending to show the extent or amount thereof is not positive or certain. In assessing those damages the jury had something more to do than merely to make a computation. They were required to determine the weight of testimony, the correctness of opinions and estimates, and, generally, to make such assessment from uncertain, and, in some respects, unsatisfactory data. Unless it can be shown that there is no admissible theory of the case which will support the verdict, it should not be disturbed. Without entering into detail, we think the verdict can be sustained on the hypothesis (which is justified by the testimony), that there was no breach of warranty, but that the plaintiffs failed to furnish the machinery at the agreed time.

For that failure an award of between $1,300 and $1,500 damages is neither so large nor so small that the court can interfere with it, having due regard to the testimony on the subject.

Finding no error in the case of which the defendants can justly complain, we must affirm the judgment of the circuit court.

*By the Court.* — Judgment affirmed.